**PROSKAUER ROSE LLP**
Eleven Times Square
New York, New York 10036-8299
Tel: (212) 969-3000
Fax: (212) 969-2900
Counsel for StabFund (USA) Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Gramercy Park Land, LLC,<br><br>                              Debtor. | Chapter 11<br><br>Case No. 11-11385 (JMP) |

**MOTION OF STABFUND (USA) INC. FOR ENTRY OF ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY AND RELATED RELIEF**

By this motion (the "Motion"), StabFund (USA) Inc. ("StabFund"), by and through its undersigned counsel, respectfully moves this Court, pursuant to sections 362(d)(1) and (d)(2) of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code"), and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure, for entry of an order granting StabFund relief from the automatic stay to take any and all steps necessary in connection with its state court foreclosure action and judgment of foreclosure and sale respecting certain real property owned by Gramercy Park Land, LLC, the debtor in the above-captioned Chapter 11 case ("Gramercy" or the "Debtor") including, without limitation, completing the pending foreclosure sale of the property and any subsequent proceedings to evict or remove the Debtor from the property. In support of the Motion, StabFund respectfully represents as follows:

**PRELIMINARY STATEMENT**

1. As of the petition date, StabFund holds a secured claim against the Debtor in the amount of $49,503,956.71, inclusive of accrued interest, which claim is secured by certain

1

mortgages on real property owned by the Debtor located at 276-280 Third Avenue, New York, New York (the "Property"). According to the Debtor's schedules, the Property is the Debtor's sole asset and has a value of $28,000,000. Accordingly, StabFund is substantially undersecured and the Debtor has no equity in the Property. In addition, given the size of StabFund's claim in comparison to all other claims in this case, it would be impossible for the Debtor to confirm a plan of reorganization without StabFund's affirmative vote. Thus, pursuant to section 362(d)(2) of the Bankruptcy Code, StabFund is entitled to relief from the automatic stay.

2. Moreover, "cause" exists for relief from the automatic stay under section 362(d)(1) of the Bankruptcy Code because StabFund's interest in the Property lacks adequate protection.

3. In addition, the instant Chapter 11 case was clearly filed in bad faith just hours before a scheduled foreclosure sale and is a last ditch effort by the Debtor to avoid an open auction of the property after its twenty-five months of delay tactics in the New York state court foreclosure were finally exhausted. The filing was induced by a third party, Alchemy Properties Inc. ("Alchemy"), as part of bad faith scheme with the Debtor to strong-arm StabFund into permitting a sale of the Property at lower than market value to Alchemy rather than exercising its right to maximize the value of its collateral through a public foreclosure sale. When StabFund refused to capitulate, the Debtor, in conspiracy with Alchemy, filed this case for the sole purpose of blocking the foreclosure sale in an effort to steer the Property to Alchemy. This too, in addition to other factors discussed herein, provides ample "cause" for relief from the automatic stay under section 362(d)(1) of the Bankruptcy Code.

6245/74789-002 Current/22807491v8

## JURISDICTION AND VENUE

4.  This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 362(d)(1) and (d)(2) of the Bankruptcy Code.

## BACKGROUND

**The Loan And Gramercy's Default**

5.  In or about August 2006, UBS Real Estate Investments, Inc. ("UBS Real Estate") agreed to extend to Gramercy a loan in the principal amount of up to $30.5 million (the "Original Loan") for Gramercy's acquisition of certain properties and development rights in connection with a parcel of land located at 276-280 Third Avenue, New York, New York. The terms and conditions of the Original Loan were memorialized in a loan agreement dated August 15, 2006 (the "Loan Agreement"). (Affidavit of Scott Liebman ("Liebman Aff.," submitted herewith), ¶ 2 and Exhibit A). In connection with the Original Loan, Gramercy executed and delivered to UBS Real Estate a Consolidated, Amended and Restated Promissory Note (the "Consolidated Note"), whereby Gramercy promised to pay to UBS Real Estate the sum of $30,500,000 (plus interest). (*Id.*, ¶ 3 and Exhibit B). As security for the Original Loan, Gramercy gave to UBS Real Estate a Consolidated, Amended and Restated Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "Consolidated Mortgage") in the principal amount of $30,500,000, dated as of August 15, 2006. (*Id.*, ¶ 3 and Exhibit C), which consolidated, amended and restated the mortgages already in existence on the Property into a single mortgage lien.

3

6.  As additional security for the Loan, Norman Kaish ("Kaish") and Leonard Taub ("Taub" and, collectively with Kaish, the "Guarantors") provided UBS Real Estate with a personal Guaranty of Payment (the "Original Guaranty"), pursuant to which the Guarantors agreed to guaranty certain of Gramercy's obligations to Plaintiff. (*Id.*, ¶ 4 and Exhibit D).

7.  UBS Real Estate later agreed, in or about September 2007, to increase the principal amount of the Original Loan by up to an additional $3.5 million (the "Additional Loan" and, collectively with the Original Loan, the "Loan"). (*Id.*, ¶ 5). The Additional Loan was memorialized in a First Amendment and Modification of Loan Agreement and Other Loan Documents, dated September 11, 2007 (the "First Amendment"). (*Id.* and Exhibit E). In connection with the Additional Loan, Gramercy executed and delivered to UBS Real Estate a Promissory Note ("Note 4"), whereby Gramercy promised to pay to UBS Real Estate the sum of $3,500,000 (plus interest). (*Id.*, ¶ 5 and Exhibit F). As additional security for the Additional Loan, Gramercy gave to UBS Real Estate a Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing ("Mortgage 4") in the principal amount of $3,500,000, dated as of September 11, 2007. (*Id.*, ¶ 6 and Exhibit G). Further, in conjunction with the First Amendment, the Original Guaranty was amended in an Amended and Restated Guaranty of Payment (the "Amended Guaranty"), whereby the Guarantors agreed to "irrevocably and unconditionally" guarantee payment of the full amount of the Debt, as amended. (*Id.*, ¶ 7 and, Exhibit H, § 1.1).

8.  On or about October 25, 2007, UBS Real Estate assigned to UBS Real Estate Securities Inc. ("UBS") its rights under and interest in the Loan Agreement and First Amendment, together with its rights under the Consolidated Mortgage and Mortgage 4; the

6245/74789-002 Current/22807491v8

Consolidated Note and Note 4; and the Original Guaranty and Amended Guaranty. (*See id.*, ¶ 8 and Exhibits I-K).

9. The Loan was due and payable in full on August 11, 2008, but Gramercy failed to pay the sums due. This constituted an "Event of Default" pursuant to section 10.1(a) of the Loan Agreement.

**Procedural History of the Foreclosure Action**

10. UBS attempted to negotiate a restructuring with Gramercy. When these efforts proved fruitless, UBS commenced an action in the Supreme Court of the State of New York, County of New York under Index No. 103763/09 (the "Foreclosure Action") seeking to foreclose upon the Consolidated Mortgage and Mortgage 4 and to recover, pursuant to the Amended Guaranty, any deficiency in Gramercy's repayment obligation that remained after the sale of the collateral. (Declaration of Michael T. Mervis ("Mervis Decl.", submitted herewith), Exhibit 1, ¶¶ 39-60).[1] The First Cause of Action in UBS' Complaint sought to foreclose the Consolidated Mortgage (*id.* ¶¶ 39-47) and the Second Cause of Action sought to foreclose Mortgage 4. (*Id.* ¶¶ 48-56). UBS' Third Cause of Action was for recovery under the Amended Guaranty in the event the debt owed under the Loan Agreement (and related Consolidated Note and Note 4) is not satisfied by the sale of the Property. (*Id.* ¶¶ 57-60).

11. Subsequent to the filing of its Complaint, UBS, on or about April 2, 2009, assigned to StabFund its rights under and interest in the loan documents. (*See* Liebman Aff., ¶¶ 10-14 and Exhibits L-O).

---

[1] In addition to Gramercy and the Guarantors (collectively the "Borrower Defendants"), six contractors and vendors of the Borrower Defendants were named as defendants on account of the separate mechanic's liens they filed against the Property (the "Lien-Holder Defendants"). (*Id.* ¶¶ 3-9). The Environmental Control Board of the City of New York ("Environmental Control Board") was also added as a defendant on account of several judgments against several prior record owners of a portion of the mortgaged property.

6245/74789-002 Current/22807491v8

12. In response to the filing of the Foreclosure Action, the Borrower Defendants asserted meritless affirmative defenses, including an affirmative defense that the originally-named plaintiff (UBS) did not have standing because its rights under the loan documents at issue had been assigned to StabFund. (Mervis Decl., ¶ 3 and Exhibit 2). The Borrower Defendants also interposed a counterclaim against UBS for alleged "fraud." (*Id.*). On June 3, 2010, UBS moved to dismiss each of the Borrower Defendants' affirmative defenses and the counterclaim and also to amend the caption of its pleading in order to substitute StabFund for UBS as the plaintiff. (*Id.* ¶ 4). The Borrower Defendants opposed both applications, arguing, *inter alia*, that there was some fact question as to whether the assignment of the loan documents from UBS to StabFund had occurred prior to the commencement of the Foreclosure Action. (*Id.*).

13. By order entered on December 11, 2009, the Court in the Foreclosure Action (the "<u>State Court</u>") dismissed the Borrower Defendants' counterclaim and all of their affirmative defenses (the "<u>December 11 Order</u>"). (Mervis Decl. ¶ 5 and Exhibit 3). The State Court also ordered that the caption of UBS' pleading be amended so as to name StabFund, as assignee of UBS, as the plaintiff. (*Id.*).[2]

14. On January 20, 2010, StabFund filed a motion in the Foreclosure Action for an order: (1) granting it summary judgment on all causes of action asserted in its Verified Complaint; (2) granting default judgments against the Lien-Holder Defendants and the Environmental Control Board; and (3) appointing a referee pursuant to Section 1321 of the New York Real Property Actions and Procedures Law (the "<u>Summary Judgment Motion</u>"). (*Id.* ¶ 6).

15. In a remarkably frivolous bid to further delay the inevitable foreclosure, the Borrower Defendants opposed StabFund's Summary Judgment Motion and cross-moved for

---

[2] On December 17, 2009, the Borrower Defendants filed a notice of appeal of the December 11 Order. The Borrower Defendants, however, subsequently did nothing to pursue the appeal. (Mervis Decl. ¶ 5).

6
6245/74789-002 Current/22807491v8

discovery on the exact same grounds that were previously considered and rejected by the State Court when it granted UBS' motion to dismiss and amend. (*Id.* ¶ 7). Specifically, the Borrower Defendants argued once more that they needed discovery on the purported issue of when the loan documents were assigned from UBS to StabFund. (*Id.*).

16. By order dated May 19, 2010, the State Court rejected the Borrower Defendants' arguments and granted StabFund's Summary Judgment Motion in its entirety, appointing Sheryl R. Menkes, Esq. as referee. (*Id.* ¶ 8 and Exhibit 4). During oral argument on the Summary Judgment motion, Justice Richard B. Lowe, III made the following observation concerning the Borrower Defendants' conduct:

> We had a discussion at the bench in which I asked you [the Borrower Defendants' Counsel], "what are we doing?" And what has been confirmed is, this is an attempt by your clients, I suspect, to buy time, and you basically acknowledged that.

(*Id.*, ¶ 9 and Exhibit 5 at p. 7).

17. On August 13, 2010, in yet another attempt to delay the inevitable, the attorneys representing the Borrower Defendants in the Foreclosure Action filed a motion to be relieved as counsel and sought a stay of all proceedings in the Foreclosure Action (the "<u>Withdrawal Motion</u>"). (*Id.*, ¶ 9). The request for the stay was premised on the approaching deadline to perfect the appeal of the December 11 Order. (*Id.*).

18. On August 25, 2010, StabFund filed and served in the Foreclosure Action a motion seeking an order confirming the referee's oath and report and for a judgment of foreclosure and sale. (*Id.* ¶ 11). StabFund's motion was not opposed on the merits and was submitted to the State Court on September 10, 2010. (*Id.*). However, on September 20, 2010, counsel for the Borrower Defendants sought an adjournment of StabFund's motion to confirm the referee's report and for a judgment of foreclosure. (*Id.*). Even though they had filed no

7

opposition to the motion, the Borrower Defendants argued that the Withdrawal Motion first needed to be decided and the Borrower Defendants needed to be given the opportunity to find new counsel. (*Id.*).

19. On September 27, 2010, the State Court granted the Withdrawal Motion but declined to stay the Foreclosure Action in any way. (*Id.*, ¶ 12.) The State Court issued a signed order granting a judgment of foreclosure and sale on November 5, 2010 (the "Judgment of Foreclosure and Sale"), which was entered as a judgment on February 15, 2011. (*Id.* and Exhibit 6).

20. The Judgment of Foreclosure and Sale was entered in the Foreclosure Action on November 5, 2010, and a foreclosure sale was scheduled for March 30, 2011. (*Id.*, ¶ 13). Pursuant to the Judgment of Foreclosure and Sale, the sum of $46,059,195.35 was due under the Consolidated Note and Note 4 as of July 26, 2010. With interest continuing to accrue, as of the petition date, the sum of $49,503,956.71 is due under both notes.[3]

**Alchemy Conspires with the Debtor to Commence the Instant Chapter 11 Case**

21. In the weeks leading up to the foreclosure sale, StabFund and its agents and counsel were contacted by representatives of Alchemy with regard to Alchemy's desire to purchase the notes and mortgages associated with the Property.

22. Alchemy first met with representatives of StabFund in late February 2011 to present an offer to purchase StabFund's collateral. As described in a letter dated March 9, 2011 from Alchemy's President, Kenneth Horn, to representatives of StabFund (the "March 9 Letter"), during that meeting Alchemy's representatives explained that:

---

[3] Pursuant to the Judgment of Foreclosure and Sale, interest on the amount due to StabFund accrues at an amount per diem of $22,262.35, exclusive of counsel fees, which is subject to upward adjustment due to compounding interest. From July 26, 2010 until the filing of the petition, 243 days have elapsed. Thus, as of the petition date, the sum of $49,503,956.71, inclusive of accrued interest, is due under the Consolidated Note and Note 4. There are also other costs and expenses due to StabFund that are not included in this figure.

8

> Alchemy ha[d] executed a detailed agreement with the present owners of the Property (an entity controlled by Messrs. Kaish and Taub) which established that if Alchemy was not the successful bidder for the Property and another suitor wins the bid, that the owners would file for bankruptcy protection to protect themselves from the foreclosure and present Alchemy as the "stalking horse" in Bankruptcy Court.

(Liebman Aff., ¶ 17 and Ex. P at pp. 1-2). In this letter, Alchemy stressed that StabFund should permit the sale of the Property directly to Alchemy, rather than through a foreclosure sale, because that way "neither party will be involved in a bankruptcy filing" and can avoid "potential break up fees in a bankruptcy (if approved) and extensive attorneys [sic] fees." (*Id.* at p. 2). The message was clear: if StabFund did not permit the sale to Alchemy, the Debtor and Alchemy would impose further expense and delay on StabFund through an eleventh-hour bankruptcy filing. In addition, Mr. Horn told representatives of StabFund at that meeting that Kaish and Taub would receive financial consideration for causing the Debtor to file the bankruptcy petition. (*Id.* ¶ 18).

23. The amount offered by Alchemy for StabFund's collateral was materially less than the amount that, based on communications with other prospective bidders, StabFund reasonably expected would be realized through the foreclosure sale. StabFund had previously engaged a well respected broker, Jones Lang LaSalle (the "Broker"), to procure bidders to the scheduled foreclosure sale in order to maximize the value of its collateral and conduct an effecive open market auction. The Broker registered in excess of 100 potential bidders, each of which executed confidentiality agreements in order to review diligence materials pertaining to the Property. Accordingly, StabFund, as it had every right to do, rejected Alchemy's offer. (Liebman Aff ¶ 19).

6245/74789-002 Current/22807491v8

24. On March 29, 2011, the night before the scheduled foreclosure sale, Gramercy filed the instant Chapter 11 petition. Two entities affiliated to Gramercy that own neighboring parcels of land near the Property also filed Chapter 11 petitions.

**RELIEF REQUESTED**

25. Pursuant to sections 362(d)(1) and (d)(2) of the Bankruptcy Code, StabFund requests that the Court enter an order granting StabFund relief from the automatic stay to take any and all steps necessary in connection with the Foreclosure Action and the Judgment of Foreclosure and Sale respecting the Property including, without limitation, completing its pending foreclosure sale of the Property and any subsequent proceedings to evict or remove the Debtor from the Property.

26. StabFund further requests that any order granting this Motion not be stayed under Bankruptcy Rule 4001(a)(3), but be effective and enforceable immediately upon entry.

**BASIS FOR RELIEF**

**A. Relief From The Automatic Stay Is Appropriate Under Section 362(d)(2) Because The Debtor Does Not Have Equity In The Property And The Property Is Not Necessary To An Effective Reorganization**

27. Under Section 362(d)(2) of the Bankruptcy Code, a bankruptcy court must grant relief from the automatic stay with respect to property if (i) the debtor does not have equity in the property and (ii) the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2). Pursuant to section 362(g) of the Bankruptcy Code, the movant requesting relief from the stay bears the burden of proof as to the debtor's equity in the property while the party opposing the relief bears the burden of proof on all other issues. See 11 U.S.C. § 362(g).

28. "Equity" is defined as the difference between the value of the subject property and the total of the secured claims against the property. See In re Indian Palms Assocs., Ltd., 61

10

F.3d 197, 206 (3d Cir. 1995); In re de Kleinman, 156 B.R. 131, 136 (Bankr. S.D.N.Y. 1993); In re Boca Dev. Assocs., 21 B.R. 624, 628 (Bankr. S.D.N.Y. 1982). In the instant case, the value of the Property is, according to the Debtors' Schedule of Assets and Liabilities, $28,000,000.00. The Property is encumbered by a lien securing StabFunds's nearly $50 million claim. Thus, since the amount of StabFund's secured claim against the Property exceeds the market value of the Property as asserted by the Debtor itself, the Debtor has no equity in the Property.

29. Once the movant makes a showing of lack of equity in its collateral, the burden shifts to the debtor to show that the collateral is necessary to an effective reorganization. United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 375-76 (1988). The "necessary to an effective reorganization" standard requires "not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect*." Id. (emphasis in original). "This means . . . that there must be a 'reasonable possibility of a successful reorganization within a reasonable time.'" Id. at 376; see also Indian Palms, 61 F.3d at 209; de Kleinman, 156 B.R. at 137. Under section 362(d)(2), the corollary to whether the property is necessary to an effective reorganization is whether an effective reorganization is realistically possible. See In re 1567 Broadway Ownership Assocs., 202 B.R. 549, 554 (S.D.N.Y. 1996) ("If a debtor cannot show that reorganization is possible, that debtor cannot show that the property is necessary to an effective reorganization").

30. The Debtor here simply cannot show that a reorganization is possible. StabFund is, by the Debtor's own admission, vastly undersecrued and the Debtor does not have any assets which are not subject to StabFund's security interest. Accordingly, there can be no reorganization without StabFund's consent given the magnitude of its claim, including any

11

deficiency claim, against the Debtor and, in the circumstances of this case, StabFund is committed to effectuating a foreclosure sale of the Property in order to maximize the value of its collateral.

31. Therefore, the Court can and should find that that there is no possibility of an effective reorganization, that the best interests of creditors will be most effectively protected by the continuation of the foreclosure proceeding, and that the automatic stay should be terminated immediately to permit the foreclosure process to be completed. See In re Pegasus Agency, Inc., 101 F.3d 882, 886 (2d Cir. 1996) ("[w]ithout a credible reorganization plan in prospect, [a debtor] is not entitled to the continuation of the automatic stay"); In re YL West 87th Holdings I LLC, 423 B.R. 421 (Bankr. S.D.N.Y. 2010) (motion by secured mezzanine lender for relief from stay to complete UCC foreclosure sale was granted because debtor lacked equity in the pledged membership interest collateral and debtor failed to prove there was any likelihood of an effective reorganization pursuant to 11 U.S.C. § 362(d)(2)).

### B. Relief From The Automatic Stay Should Be Granted Under Section 362(d)(1) "For Cause"

32. Section 362(d)(1) of the Bankruptcy Code provides, in pertinent part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay --
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d)(1).

#### (i) There Is Cause To Lift The Automatic Stay Because StabFund Lacks Adequate Protection

33. The party opposing relief from the stay bears the burden of proof on the issue of whether the creditor's interest in the collateral is adequately protected. See 11 U.S.C. § 362(g);

12

In re Domestic Fuel Corp., 70 B.R. 455, 462-63 (Bankr. S.D.N.Y. 1987). Adequate protection is required where the value of the collateral securing such creditors interest is declining in order to protect the creditor from diminution. *See In re Grant Assocs.*, 1991 WL 21228, at *6 (S.D.N.Y. 1991) (finding that secured party is entitled to adequate protection where its collateral is found to be declining in value during the period of the stay).

34. As noted above, there is *no* equity in the Property to adequately protect StabFund's interest in the Property. StabFund's lien against the Property exceeds the Debtor's assessment of the Property's market value by $18,000,000, or approximately 39% of the outstanding secured debt. Moreover, it appears that the Debtor, a special purpose vehicle, has no assets other than the Property. There are various upcoming expenses assocatiated with, among other things, the maintanence of StabFund's collateral, including the payment of real estate taxes on July 1, 2011, insurance premiums and related expenses which, if not paid, will result in the diminution of the value of the collateral. The affidavit submitted in connection with the Debtor's petition indicates that no cash reciepts are anticipated. (Debtor's Affidavit ¶ 14) [Docket No. 2]. Accordingly, the Debtor is unable to offer any form of adequate protection to StabFund.

35. Moreover, cause exists to lift the automatic stay as StabFund is being unduly prejudiced while the realizable value of its collateral is likely declining due to the filing, which occurred on the eve of the scheduled foreclosure sale. As previously stated, in order to maximize the value of its collateral, StabFund retianed a well respected real esate broker to help solicit interest and procure bidders at the foreclosure sale. StabFund and its Broker spent considerable time and effort generating significant interest from many prospective purchasers. If the foreclosure sale is not promptly rescheduled, the momentum of the sales process will be lost and potential bidders may redeploy their capital to other opportunities.

36. As a result of the foregoing, there is cause to lift the automatic stay because StabFund lacks adequate protection.

### (ii) There Is Cause To Lift The Automatic Stay Because The Petition Was Filed In Bad Faith

37. The filing of a bankruptcy case in bad faith can constitute "cause" for relief from the automatic stay under section 362(d)(1) of the Bankruptcy Code. See <u>Manhattan King David Restaurant Inc. v. Levine</u>, 163 B.R. 36, 40 (S.D.N.Y. 1993) (bad faith under section 362 is often found upon a showing that a single asset debtor or a non-going concern filed with the intent to gain relief from a state court action); <u>see</u> <u>also</u> <u>In re 652 W. 160th LLC</u>, 330 B.R. 455, 466-67 (Bankr. S.D.N.Y. 2005) (series of factors, including debtor's bad faith in filing single asset case upon eve of expiration of time within which it was authorized to redeem that single asset from prepetition tax foreclosure judgment, warranted stay relief for "cause" under section 362(d)(1)); <u>In re 234-6 W. 22nd St. Corp.</u>, 214 B.R. 751, 756, 761 (Bankr. S.D.N.Y. 1997) (relief from stay granted based upon debtor's bad faith filing).

38. In determining whether bad faith exists, courts consider a number of factors. Often, the first factor addressed is whether "on the filing date there was no reasonable likelihood that the debtor intended to reorganize and no reasonable probability that it would eventually emerge from bankruptcy proceedings." <u>In re 652 W. 160th LLC</u>, 330 B.R. at 466-467. Other factors include that: (1) the debtor has only one asset; (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors; (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt; (4) the debtor's case is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action; (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their

6245/74789-002 Current/22807491v8

rights; (6) the debtor has little or no cash flow; (7) the debtor cannot meet current expenses including the payment of personal property and real estate taxes; and (8) the debtor has no employees. See id.

39. Here, the Debtor's intentions are clear: Gramercy has no prospects for reorganizing. It filed this case to frustrate a duly noticed public foreclosure sale in order to attempt to give its preferred bidder, Alchemy, an unfair advantage that Alchemy would not enjoy in the foreclosure sale. Nowhere in the Debtor's filings does it disclose any of the details of Alchemy's arrangements with the Debtor or its insiders, even though the March 9 Letter refers to a "detailed agreement" between Alchemy and those insiders. Because any sale proceeds must be paid to StabFund, which is committed to the foreclosure process, the filing serves no legitimate reorganizational purpose.

40. Further, application of the previously-recited factors also demonstrates that this case was filed in bad faith. First, the Debtor has only one material asset -- the Property. In the loan documents, the Debtor made a series of representations and warranties relating to its singular purpose, including that it "does not own and will not own any asset or property other than (i) the Property, and (ii) incidental personal property necessary for the ownership or operation of the Property." (Loan Agreement, § 3.1.24(a).) The Debtor's one asset is the subject of the underlying Foreclosure Action in New York State Court. These two factors clearly weigh in favor of a bad faith finding.

41. In addition, the Debtor's main creditor is StabFund, who has a secured claim in the amount of nearly $50 million. StabFund is the sole plaintiff in the Foreclosure Action. The claims of the Debtor's other purported unsecured creditors are small by comparison: the vast majority of the other alleged creditors all have claims under $50,000. The largest scheduled

15

liability is a $700,000 trade debt payable to an attorney. [Docket No. 2] It is inconcievable that this attorney, who was not involved in the Foreclosure Action, would accrue charges of this magnitude for an insolvent entity without operations. Further, it is notable that this attorney is listed as having the same exact address as the Debtor – 319 Lafayette Street. [Docket No. 2] As such, at its core, this dispute is a two-party dispute between the Debtor and StabFund. The dispute has already been conclusively resolved in StabFund's favor through the Foreclosure Action.

42. Moreover, it is not at all clear from the "Resolution of the Board of Directors of Gramercy Park Land, LLC" whether or not the instant Chapter 11 filing was properly authorized. [Docket No. 3] The resolutions make reference to a Mr. Kal Dolgin, who is described as the purported independent manager empowered pursuant to the organizational documents to authorize the filing of the instant case. There is no explanation of Mr. Dolgin's relationship to the Debtor or its principals. Moreover, Mr. Dolgin is not a signatory to the resolutions and the Debtor has not otherwise provided any documentation to this Court supporting the assertion that Mr. Dolgin authorized the filing of the insant case. Filing a Chapter 11 case without proper authorization is another factor that supports a bad faith finding. Chitex Communication, Inc. v. Kramer, 168 B.R. 587, 590 (S.D. Tex. 1994) (finding bad faith where Chapter 11 petition was filed without legal authority to do so).

43. Further, the Debtor cannot meet -- and has not been meeting for some time now -- the current expenses of the Property. Indeed, in the Debtor's Affidavit submitted in conjunction with its bankruptcy petition, the Debtor acknowledges that it has a cash flow of $0, as compared to expenses of $3,000 for the 30 days following the filing of the bankruptcy petition. (Debtor's Affidavit ¶ 14.) Additionally, real estate taxes and insurance obligations will continue to accrue;

6245/74789-002 Current/22807491v8

the Debtor has provided no indication as to how these amounts will be paid. The Debtor also freely admits that it has no employees. (*Id.* ¶ 13.) Like the other factors, these factors weigh in favor of a bad faith finding.

44. As a result of the foregoing, there is cause to lift the automatic stay because the instant involuntary petition was filed in bad faith.

C. **Waiver Of The Fourteen Day Stay Under Bankruptcy Rule 4001(a)(3) Is Warranted**

45. Courts may waive the fourteen day stay under Bankruptcy Rule 4001(a)(3) based upon the totality of the circumstances and as an equitable remedy. [4] See In re Eclair Bakery, Ltd., 255 B.R. 121, 143 n.42 (Bankr. S.D.N.Y. 2000) (stay under Bankruptcy Rule 4001(a)(3) reduced due to debtor's unclean hands); In re Stoltzfus, No. 09-11904 BF, 2009 WL 2872860, at *7 (Bankr. E.D. Pa. Mar. 30, 2009) (stay under Bankruptcy Rule 4001(a)(3) waived due to debtor's improper filing of bankruptcy case) (citing In re Pick, No. BK 08-82149-TLS, 2008 WL 5392017, at *3 (Bankr. D. Neb. Dec. 18, 2008)); In re El Mariachi, LLC, No. 07-32407 (ASD), 2008 WL 2756921, at *2 (Bankr. D. Conn. July 13, 2008)).

46. StabFund submits that the bad faith filing of the instant petition, combined with the delays already suffered by StabFund through the Debtor's frivolous tactics in the Foreclosure Action, warrant a waiver of the fourteen day stay under Bankruptcy Rule 4001(a)(3). Given that StabFund was merely hours away from holding a foreclosure sale when the Debtor filed its petition, it should not be forced to wait any longer. Accordingly, StabFund respectfully requests that the Court waive the fourteen day stay under Bankruptcy Rule 4001(a)(3).

---

[4] Bankruptcy Rule 4001(a)(3) provides that an order granting a motion for relief from the automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise. Fed. R. Bankr. P. 4001(a)(3).

17

## NOTICE

47. Notice of this Motion has been provided to (a) the Debtor, (b) the Office of the United States Trustee for the Southern District of New York and (c) all parties that have requested notice in this case. StabFund submits that such notice is appropriate and that no other notice is necessary or required.

## NO PRIOR REQUEST

48. No prior request for the relief sought in this Motion has been made to this or any other Court.

**WHEREFORE**, StabFund respectfully requests that this Court enter an order, substantially in the form attached hereto as Exhibit A, granting StabFund relief from the automatic stay pursuant to sections 362(d)(1) and (d)(2) of the Bankruptcy Code to take any and all steps necessary in connection with the Foreclosure Action and the Judgment of Foreclosure and Sale respecting the Property, including, without limitation, completing its pending foreclosure sale of the Property and any subsequent proceedings to evict or remove the Debtor from the Property; (b) waiving the fourteen day stay under Bankruptcy Rule 4001(a)(3); and (c) granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
      April 1, 2011

                              **PROSKAUER ROSE LLP**

                              By: /s/ Jeffrey W. Levitan
                                  Jeffrey W. Levitan
                                  Michael T. Mervis
                                  Adam T. Berkowitz
                                  Eleven Times Square
                                  New York, New York 10036-8299
                                  Tel: (212) 969-3000
                                  Fax: (212) 969-2900

                              Counsel for StabFund (USA) Inc.