The Law Offices of Avrum J. Rosen, PLLC
Attorneys for the Debtor
38 New Street
Huntington, New York 11743
(631) 423-8527
Avrum J. Rosen

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re:

GRAMERCY PARK LAND, LLC,                                 Chapter 11
                                                         Case No.: 11-11385-jmp

                                    Debtor.
---------------------------------------------------------x

## DISCLOSURE STATEMENT FOR THE
## PLAN OF REORGANIZATION FILED BY THE DEBTOR

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR
REJECTION OF THE PLAN.  ACCEPTANCES OR
REJECTIONS MAY NOT BE SOLICITED UNTIL A
CONDITIONAL DISCLOSURE STATEMENT HAS BEEN
APPROVED BY THE BANKRUPTCY COURT.  THIS
DISCLOSURE STATEMENT IS BEING SUBMITTED FOR
APPROVAL BUT HAS NOT BEEN APPROVED BY THE
COURT.**

        This Disclosure Statement ("Disclosure Statement") is being provided by Gramercy Park
Land, LLC, the Debtor and Debtor-in-Possession (the Debtor"), by its counsel, The Law Offices
of Avrum J. Rosen, PLLC, pursuant to the requirements of Section 1125(f)(3) of the Bankruptcy
Code (the "Bankruptcy Code"), to those known holders of a claim or interest who are entitled to
vote on the confirmation of the Plan of Reorganization (the "Plan") proposed by the Debtor in
order to disclose adequate information, deemed to be material, important and necessary for the
Debtor's creditors ("Creditors") to make an informed judgment and an informed decision in
exercising their right to vote on the Plan.

        Along with this Disclosure Statement, you will receive a copy of the proposed  Plan, a
Ballot and a Notice fixing a date for a hearing on the confirmation of the Plan.  Annexed to this
Disclosure Statement or available on-line at the Court's electronic website
www.nysb.uscourts.gov are the following exhibits:


        Exhibit "A":    Plan of Reorganization;

1

Exhibit "B":    Copy of the petition and schedules the Debtor;
Exhibit "C":    Purchase and Sale Agreement
Exhibit "D":    Amended and Restated Agreement
Exhibit "E":    Bidding Procedures

The Bankruptcy Court has not yet scheduled a hearing on confirmation of the Plan. The date, time and place of the hearing will be found in the "Notice Fixing a Date for a Hearing on Confirmation," which accompanies this notice. The Creditors may vote on the Plan by completing and mailing the enclosed ballot to the attorneys for the Debtor, The Law Offices of Avrum J. Rosen, PLLC, 38 New Street, Huntington, New York 11743. Please see Part XII for an explanation of the voting process and Confirmation of the Plan.

In order for the Plan to be accepted and thereafter confirmed, ("confirmation"), at least two-thirds (2/3) in amount and more than one-half (½) in number of allowed claims of each class of creditors who vote and who are impaired under the Plan must cast their vote for the acceptance of the Plan. A CREDITOR WHO DOES NOT VOTE FOR THE ACCEPTANCE OR REJECTION OF THE PLAN WILL NOT COUNT IN THE OUTCOME OF THE PLAN'S ACCEPTANCE.

Under the proposed Plan, Classes 1, 2 & 3 are  impaired.

**THIS DISCLOSURE STATEMENT IS THE ONLY AUTHORIZED STATEMENT WITH RESPECT TO THE PLAN.  NO OTHER REPRESENTATIONS CONCERNING THE DEBTOR, ITS OPERATIONS OR THE VALUE OF ITS PROPERTY HAVE BEEN AUTHORIZED BY THE DEBTOR. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO OBTAIN YOUR ACCEPTANCE WHICH ARE OTHER THAN OR INCONSISTENT WITH THE INFORMATION CONTAINED HEREIN SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION. THIS DISCLOSURE STATEMENT HAS BEEN CONDITIONALLY APPROVED BY ORDER OF THE BANKRUPTCY COURT.  SUCH APPROVAL BY THE BANKRUPTCY COURT DOES NOT CONSTITUTE A RECOMMENDATION BY THE COURT AS TO THE PLAN'S MERITS.**

The Debtor and its counsel have prepared the Chapter 11 Plan and submit that this Plan is in the best interest of Creditors generally and recommend acceptance of the Plan by those Creditors who vote. It is the belief of the Debtor that if the Plan is denied confirmation, unsecured Creditors will receive less than they will receive under the Plan. This Disclosure Statement has been approved by the Court as containing information of a kind and in sufficient detail that will enable Creditors to make an informed judgment about the Plan, and the Debtor has been authorized to use this Disclosure Statement in connection with the solicitation of ballots on the Plan. At a hearing on confirmation the Court will consider whether the Plan is feasible, and whether it is in the best interests of the Creditors.

**PART I**

## DEFINITIONS

For the purposes of this Disclosure Statement, the terms used herein shall be defined as they are defined in the Debtor's Plan of Reorganization.

## PART II
## PRELIMINARY STATEMENT

On March 29, 2011 (the "Petition Date"), GRAMERCY PARK LAND, LLC, "Gramercy") the above-referenced Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Gramercy is the owner of real property known as 276-280 Third Avenue, New York, New York ("Parcel A") Also on March 29, 2011, LT 266 THIRD AVENUE, LLC, and NK 266 THIRD AVENUE, LLC ("LTNK") filed voluntary petitions for Chapter 11 relief . LTNK 266 are the owners of real property known as 266-270 Third Avenue, New York, New York ("Parcel B'). Gramercy and NKLT shall collectively be referred to as the "Debtors". The Debtors have requested that the Chapter 11 Cases be jointly administered for procedural purposes only. The Debtors are operating their business as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code has been appointed.

## PART III
## RETENTION OF PROFESSIONALS

The Debtor has submitted an application to retain The Law Offices of Avrum J. Rosen, PLLC, as counsel to the Debtor.

## PART IV
## REPRESENTATIONS AND SCOPE OF STATEMENT

The information contained herein has not been subject to a certified audit, and accordingly, the Debtor is unable to warrant or represent that the information contained herein is without any inaccuracies. The Debtor believes that the information contained herein is accurate and has verified its accuracy to the extent possible.

## PART V
## DESCRIPTION OF THE DEBTOR AND ITS BUSINESS

The Debtor is the owner of Premises known as 276-280 Third Avenue, New York, New York, inclusive of all Air Rights and other Development Rights appurtenant to the 266 Third Parcel and the 276 Third Parcel (collectively, the "Development Parcels"), and the Development Rights appurtenant to 266 Third Avenue, 272 Third Avenue, 274 Third Avenue and 158 East 22nd Street, New York, New York (the "266/272/274/158 Development Rights"). Seller previously entered into certain agreements dated March 27, 2008 (the "Existing Air Rights Agreements") for the purchase of the Inclusionary Air Rights from East 46th Street Development

Company which consist of a total of 21,335 square feet (14,935 square feet and 6,400 square feet appurtenant to the parcel known as 228 East 46th Street, New York, N.Y.) of Inclusionary Air Rights.  The Existing Air Rights Agreements have terminated pursuant to their terms by reason of Debtor's default thereunder and that the Debtor can no longer represent to a Purchaser that it will be able to acquire the Inclusionary Air Rights or assign those Air Rights Agreements to a Purchaser The Debtor's affiliates own the property located at 266-270 Third Avenue, New York, New York.   The two properties, together with the air rights were part of a development project for which the Debtors had obtained building department approval.

<div align="center">

**PART VI**
**EVENTS LEADING TO BANKRUPTCY**

</div>

The Debtors' current financial difficulties arose as a result of the general down turn in the economy.  The Debtors were involved in the lengthy and expensive process of obtaining approvals for the development of their parcels.  Since the collapse of the real estate market, the Debtors have been unable to obtain the financing needed to complete the buildings on either, or both of the parcels.  As a result, the mortgages on the parcels have gone into default. STABFUND (USA) ("STABFUND (USA)") is the holder of the mortgage as to the real property owned by this Debtor.  Vasos LLC ("Vasos") is the holder of the mortgage as to the real property owned by NK 266 Third Avenue LLC and LT 266 Third Avenue LLC.

The two parcels described *inter alia* as Parcel A and Parcel B, are not adjacent. However, Gramercy, as the owner of 276-280 Third Avenue, obtained the "air rights" over the parcels in between the two parcels described herein, as well as the air rights over Parcel B. Those air rights were also pledged to STABFUND (USA).

Gramercy had the right to purchase certain inclusionary air rights ("Incusory Air Rights") which increased the permitted size of the building.  These Inclusionary Air Rights belong to East 46th Street Development Company which consists of a total of 21,335 square feet (14,935 square feet and 6,400 square feet appurtenant to the parcel known as 228 East 46th Street, New York, New York.  Gramercy's agreements for these Inclusionary Air Rights have terminated pursuant to their terms by reason of Gramercy's default thereunder.  The Debtors can no longer represent that they will be able to acquire the Inclusionary Air Rights or assign the Existing Air Rights Agreements to a Purchaser.  The Debtors had obtained several extensions of the time to execute the option for the Inclusionary Air Rights, but eventually ran out of funds to obtain further extensions.  The price to execute that option was approximately $5.2 million dollars.

The Debtors had obtained final approval of building plans from the City of New York to construct two buildings on the parcels with a bridge spanning the adjacent parcels.  These plans included the square footage gained from the Inclusionary Air Rights.  While the Inclusionary Air Rights are, to the Debtors' understanding, still for sale, no one would purchase them without knowing they could acquire both Parcel A & B and all of the other air rights.   Without the air rights over Parcel B, that parcel has minimal value.

A foreclosure sale of Parcel A, was scheduled for 1:00 p.m. on March 30, 2011. Pursuant to the Judgment of Foreclosure and Sale, the amount claimed to be due and owing STABFUND (USA) is $46,059,195.35 as of July 26, 2010, plus additional interest, costs, charges and disbursements. The principal balance of the loan, prior to the imposition of interest at the default rate, as well as the inclusion of other expenses, is approximately $30,500,00.00. STABFUND has filed a motion for relief from the automatic stay to authorize them to proceed with the foreclosure sale.

In addition to the foreclosure sale of the assets of this Debtor, as described *inter alia*, there was also scheduled the foreclosure sale of Parcel B, which was also scheduled for the same date and time. The Vasos' mortgage is in the approximate amount of $8,102,007.66, plus costs and interest from an unspecified time period, pursuant to the notice of sale.

The coordination of the two sales was a crude attempt to attempt to maximize value within the confines of the state foreclosure process wherein there were two separate and distinct actions. There was no ability to hold the kind of auction which is typical in Chapter 11 proceedings, wherein the parcels are offered singly and as one parcel to maximize value.[1]

In these cases, the auction could play out in a number of scenarios. Parcel A has value as part of the entire assemblage or as a standalone development project utilizing some, but not all of the air rights. Parcel B has value as part of the overall project, a different value with the air rights over its property back and less value "as is".

Over the past several months, the principals of the Debtors have been negotiating with a number of developers interesting in purchasing either one or both of the parcels described herein. Upon information and belief, several parties have also been negotiating with STABFUND (USA) to purchase its mortgage. As a result of the extensive negotiations, the Debtors entered into an agreement, which was modified and restated on several occasions, to enter into a proposed stalking horse contract with Alchemy Gramercy, LLC ("Alchemy" or "Purchaser"). Alchemy is a subsidiary of Alchemy Properties, Inc., a major developer in the New York area. The Agreement calls for Alchemy to be the stalking horse buyer for Parcel A. It further gives Alchemy the option to be the stalking horse buyer for Parcel B. Alchemy has agreed to pay the

---

[1] The Debtors became concerned that the state court auction process would not yield the highest and best price for the parcels. This concern was accentuated by the fact that Stabfund (USA), through its broker, offered to pay Alchemy a 2% breakup fee from the state foreclosure auction, if it breached its agreement to fund the Debtors with sufficient amounts to file these petitions. Since the bankruptcy auction process could only enhance Stabfund (USA)'s recovery, as well as save over a million dollars in transfer taxes, as the sale will be done pursuant to a plan, serious questions were raised as to Stabfund (USA) ' motives. Moreover, Stabfund (USA) also threatened Alchemy with litigation if it went forward with its agreements. The Debtors believe that these actions may violate 18 U.S.C. §152(6) and reserves all of their rights in this regard.

sum of at least $27,500,000.00 for Parcel A, as well as the appurtenant air rights (excluding the inclusionary rights which the Debtor and/or its affiliates no longer own). The proposal is for this property to be the subject of an auction sale pursuant to this plan of reorganization. The proposed auction sale shall be offered together with an auction of Parcel B and with the parcels also being offered together as well. As part of the sale of Parcel A, Alchemy has pledged $400,000.00 to the estate which amount shall be used to pay both administrative, priority and general unsecured creditors pursuant to the absolute priority rule in additional to any amounts that it pays to the secured creditor as a result of the auction in this case. If Alchemy elects to be the stalking horse bidder for Parcel B, it will pay $100,000.00 for the administrative, priority and unsecured creditors according to the absolute priority rule, in addition to any amount it pays to the secured creditor in those cases. Lastly, Alchemy has agreed to pay to Spectrum 1 Capital Corp. ("Spectrum") additional compensation to obtain the Debtors' principals expertise in the development process if it is the successful bidder. The principals of the Debtors are employees of Spectrum. That agreement is not part of what any other bidder must assume as part of its stalking horse bid. To ensure that there is no conflict of interest between the Debtors' principals and any other bidder that does not wish to engage the services of Spectrum, the Bidding Procedures and the proposed Order, include provisions for the input and consultation with the secured lenders in these cases. Should any Committee be formed in these cases, its input would also be incorporated into the Order.

## PART VII
## DESCRIPTION OF THE PLAN

THIS PART PRESENTS ONLY A SUMMARY OF THE PLAN OF REORGANIZATION PROPOSED BY THE Debtor. CREDITORS ARE URGED TO READ THE PLAN IN FULL AND TO CONSULT WITH COUNSEL AS TO ITS CONTENT. THE PLAN REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT BETWEEN THE DEBTOR AND HIS CREDITORS.

## CLASSIFICATION OF CLAIMS AND INTERESTS

Administrative Expense Claims. Administrative Expense Claims are not classified under the Plan in accordance with section 1123(a)(1) of the Bankruptcy Code. Each Allowed Administrative Expense Claim shall be paid in full in Cash on the later of (a) the Effective Date, or (b) in the event such Administrative Expense Claim is not Allowed as of the Effective Date, the date on which the Bankruptcy Court enters an order allowing such Administrative Expense Claim, or (c) such later date as the Debtor (or, if it is after the Effective Date, the Post-confirmation Debtor) and the Holder of such Allowed Administrative Expense Claim otherwise agree in writing, or as soon thereafter as is practicable; *provided, however*, that Allowed Administrative Expense Claims incurred by the Debtor or the Post-confirmation Debtor after the Confirmation Date, including, without limitation, claims for Professionals' Fees, shall not be subject to application and may be paid by the Debtor or the Post-confirmation Debtor, as the case may be, in the ordinary course of business and without further Bankruptcy Court approval.

Any Claimant seeking allowance of an Administrative Expense Claim for an Administrative Expense Claim the amount of which is not agreed to in writing by the Debtor or the Post-confirmation Debtor and the Claimant, or otherwise Allowed by a Final Order, <u>must</u> file proof of its Administrative Expense Claim with the Bankruptcy Court and serve a copy thereof upon (a) the Debtor's counsel, Law Offices of Avrum J. Rosen, PLLC, Attn: Avrum J. Rosen, Esq., (b) Stabfund's counsel, Proskauer Rose LLP, Eleven Times Square, New York, NY 10036, Attn: Jeffrey W. Levitan, Esq. and Adam T. Berkowitz, Esq., and (c) the United States Trustee, no later than fifteen (15) days following the Confirmation Date; *provided, however*, that with respect to any such timely filed Administrative Expense Claim, such Claim shall be Allowed only if (i) the amount is agreed to in writing by the Debtor or the Post-confirmation Debtor and such Claimant, (ii) no objection to the allowance thereof is interposed by the Debtor or the Post-confirmation Debtor on or before thirty (30) days after the Effective Date, or such other date as may be established by the Bankruptcy Court, or (iii) if an objection is interposed, (x) such Administrative Expense Claim has been allowed by a Final Order, or (y) such objection is withdrawn. With respect to Claimants seeking allowance of Professional Fees as Administrative Expense Claims, all applications for final compensation of Professionals for services rendered and for reimbursement of expenses incurred for any period prior to the Confirmation Date must be filed no later than thirty (30) days following the Confirmation Date, and shall be deemed Allowed following entry by the Bankruptcy Court of any final order or orders allowing same.

Each Administrative Expense Claim Claimant who seeks allowance of an Administrative Expense Claim (a) that is not agreed to in writing by the Debtor or the Post-confirmation Debtor and the Claimant, or otherwise allowed by a Final Order, and that fails to timely and duly file a proof of its Administrative Expense Claim, or (b) for Professional Fees that fails to timely and duly institute a request for a hearing thereon, as provided for in the Plan, shall have its Claim expunged and shall thereafter be forever barred from asserting any such Administrative Expense Claim. Except as otherwise specified in the Plan or a Final Order of the Bankruptcy Court, the Allowed Amount of an Allowed Administrative Expense Claim shall not include interest on such Claim from and after the Filing Date. The Allowed Administrative Expense Claims of the Debtor's Professionals and the U.S. Trustee Fees will be paid from the Plan Contribution.

### Treatment of Priority Tax Claims

<u>Priority Tax Claims</u>. As of the filing of the Plan, no Priority Tax Claims were filed. Any Allowed Priority Tax Claims will be paid in full, on the Effective Date, with statutory interest.

### The Allowed Claims against the Debtor are divided into the following classes:

<u>Class 1.</u>    Class 1 consists of the Allowed Stabfund Secured Claim, which is secured by a valid mortgage Lien against the Real Property. Stabfund is recognized as a Qualified Bidder that is authorized and permitted to make a Credit Bid up to the full amount of the Allowed Stabfund Secured Claim.

<div style="margin-left: 2em;">

Class 2.       Class 2 consists of all General Unsecured Claims.

Class 3.       Class 3 consists of all Interests.

</div>

<div style="text-align: center;">

**ARTICLE VIII**

**Treatment of Claims and Interests**

</div>

**Class 1**:   Secured Claim

**Treatment**.  Class 1 consists of the Allowed Secured Claim of Stabfund.

In the event that the Successful Bidder or Back-up Bidder, if applicable, acquiring the Real Property is an Entity other than Stabfund, then Stabfund shall receive all Cash paid by such Entity towards the auction of its collateral at the Closing up to the full amount of the Allowed Stabfund Secured Claim, in excess of the amounts necessary the pay all Real Estate Taxes at the Closing.

(a)     **Full Settlement**.  The treatment and consideration to be received by Stabfund on account of its Allowed Claim in Class 1 shall be in full settlement and final satisfaction of its Claims against the Debtor; *provided, however*, Stabfund does not waive and specifically preserves and retains the right to assert any deficiency claims against any third-party obligors.  Stabfund's deficiency claim, if any, shall be a General unsecured claim.

(b)     Classes 1 is Impaired under the Plan.

**3.2**     **Class 2**:   General Unsecured Claims.

(c)     **Treatment**.  Class 2 consists of all Allowed General Unsecured Claims, including mechanics liens filed against the real property and any deficiency claim of Stabfund. Each Holder of an Allowed Claim in Class 2 shall be entitled to receive its Pro Rata share of (i) the Cash deposited into the Distribution Fund, if any, after payment in full to all Holders of the Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed Priority Claims, if any and (ii) the General Unsecured Claim Class 2 Distribution Fund.  Subject to the terms hereof, any distribution to Holders of Allowed General Unsecured Claims in Class 2 shall be made as soon as reasonably practicable after the Closing.

(d)     **Full Settlement**.  The treatment and consideration to be received by Holders of Allowed Class 2 Claims shall be in full settlement and final satisfaction of their respective Claims.

(e)     Class 2 is Impaired under the Plan.

<div style="text-align: center;">8</div>

3.3. Class 3: Interests.

Treatment. Class 3 consists of Allowed Interests in the Debtor, including, without limitation, any Holders of options, warrants and other rights to acquire equity interests in the Debtor. Class 3 consists of the allowed claim(s) of the shareholder(s) of the Debtor. The shareholders shall not retain their interests in Debtor and shall receive no distribution unless all other classes are paid in full with interest. This class is impaired but is not entitle to vote under the Plan. This Class is presumed to have rejected the Plan.

## PART VIX
## MEANS FOR EXECUTION OF THE WITHIN PLAN

The Premises shall be sold at an auction sale to be held at the United States Bankruptcy Court for the Southern District of New York pursuant to 11 U.S.C. § 1123(a)(5)(B) and (D). The sale shall be held on either the same date as the hearing on confirmation of the within Plan ("Confirmation and Sale Hearing") or such other day as is selected by the Court, pursuant to the terms of sale and bidding procedures contained herein. The sale shall be advertised as set forth in a separate order of the Court. The premises will be auctioned for sale both as separate parcels. Premises A and Premises B as defining in the Bidding Procedures Order. Each premises shall be auctioned separately and then a second auction shall occur where both Premises A and Premises B shall be auctioned collectively. Whichever sale, whether separately or collectively, shall bring in the highest total bid, then that method of sale shall be used

As part of the sale of Parcel A, Alchemy has pledged $400,000.00 to the estate which amount shall be used to pay both administrative, priority and general unsecured creditors pursuant to the absolute priority rule in additional to any amounts that it pays to the secured creditor as a result of the auction in this case. If Alchemy elects to be the stalking horse bidder for Parcel B, it will pay $100,000.00 for the administrative, priority and unsecured creditors according to the absolute priority rule, in addition to any amount it pays to the secured creditor in those cases.

Seller is Gramercy Park Land, LLC, the Debtor herein.

Premises for Sale: Premises A is known as 276-280 Third Avenue, New York, New York, inclusive of all Air Rights and other Development Rights appurtenant to the 266 Third Parcel and the 276 Third Parcel (collectively, the "Development Parcels"), and the Development Rights appurtenant to 266 Third Avenue, 272 Third Avenue, 274 Third Avenue and 158 East 22nd Street, New York, New York (the "266/272/274/158 Development Rights"). Premises B is known as 266-270 Third Avenue, New York, New York. Conveyance is in "all as presently exists" in "as is" "where is"condition "with all faults" except as set forth in the Purchase Agreement.

**PLEASE TAKE NOTICE THAT the March 27, 2008 option Agreement (the "Existing Air Rights Agreements") for the purchase of the Inclusionary Air Rights from East 46th Street Development Company which consist of a total of 21,335 square feet (14,935 square feet and 6,400 square feet appurtenant to the parcel known as 228 East 46th Street, New York, N.Y.) of Inclusionary Air Rights has terminated pursuant to their terms by reason of Debtor's default thereunder and that the Debtor can no longer represent to Purchaser that it will be able to acquire the Inclusionary Air Rights or assign those Air Rights Agreements to a Purchaser.**

<u>Purchase Price:</u> Sale to be held at auction pursuant to 11 U.S.C. § 1123(a)(5)(B) and (D) . Initial bid for Premises A to be not less than $27,500,000.00.

<u>Purchase and Sale Agreement</u>: The Debtor has entered into a Purchase and Sale Agreement, with Alchemy Gramercy, LLC, a Delaware limited liability company having an address at 200 Madison Avenue, New York, New York 10016, a copy of which Purchase and Sale Agreement is annexed hereto as "Exhibit C" for the sale of premises located at 276-280 Third Avenue, New York, New York, which incorporates Amended and Restated Agreement between Gramercy Park Land, LLC and Alchemy Gramercy, LLC, a copy of which is annexed hereto as "Exhibit "D".

<u>Broker</u> - None.

<u>Adjustments</u> - None.

<u>Conditions of Closing</u>  This sale is expressly subject to Bankruptcy Court approval pursuant to an order confirming the within Plan and auction sale of the Premises ("Confirmation and Sale Order") and is subject to higher and better bids to be received at the Confirmation and Sale Hearing.

<u>Closing</u> to be scheduled within 14 days of the entry of the Confirmation and Sale Order, which closing shall be held at the offices of Avrum J. Rosen, PLLC, 38 New Street, Huntington, New York 11743 or such other location designated by the Debtor in the Borough of Manhattan .

<u>Applicable Law</u> is the law of the State of New York.

<u>Risk of Loss</u> is the sellers until the date of closing.

Bidding Procedures are annexed hereto as "Exhibit E" and have been submitted for approval by Notice of Motion.

## PART X
## <u>TREATMENT OF EXECUTORY CONTRACTS</u>

Assumption and Rejection of Executory Contracts and Unexpired Leases. As of the Confirmation Date, any executory contract or unexpired lease that has not been expressly assumed or rejected with approval by order of the Bankruptcy Court shall be deemed to have been rejected unless (a) there is then pending before the Bankruptcy Court a motion to assume such unexpired lease or executory contract, or (b) the Bankruptcy Court has entered an order extending the period during which a motion may be made to assume such unexpired lease or executory contract, and such a motion is filed with the Bankruptcy Court before the expiration of such period. The Disclosure Statement and the Plan shall constitute due and sufficient notice of the intention of Debtor to reject all executory contracts and unexpired leases that are not otherwise assumed. The Confirmation Order shall be deemed an order under section 365(a) of the Bankruptcy Code rejecting any such executory contracts and unexpired leases that are not otherwise assumed.

Bar Date for Rejection Damage Claims. Unless otherwise provided for by an order of the Bankruptcy Court entered on or prior to the Confirmation Date, any Rejection Damage Claim for an executory contract or unexpired lease rejected by the Plan must be filed with the Bankruptcy Court within fifteen (15) days of the Confirmation Date. Any Entity that fails to file its Rejection Damage Claim within the period set forth above shall be forever barred from asserting a Claim against the Debtor, the Estate, or any Property or interests in Property of the Debtor or the Post-confirmation Estate. All Allowed Rejection Damage Claims shall be classified as General Unsecured Claims (Class 4) under the Plan.

## PART XI
## INJUNCTION, RELEASE AND EXCULPATION

**Injunction. Except as otherwise provided in or to enforce the Plan or Confirmation Order, on or after the Effective Date all Entities that have held, currently hold, or may hold, a Claim, Lien, Interest or other liability against or in the Debtor that would be discharged or satisfied upon confirmation of the Plan and the Effective Date but for the provisions of Bankruptcy Code § 1141(d)(3) are permanently enjoined from taking any of the following actions on account of such Claim, Lien, Interest or right: (a) commencing or continuing in any manner any action or other proceeding on account of such Claim, Lien, Interest, or right against the Post-confirmation Estate, Post-confirmation Estate Assets, any Property that is to be distributed under the Plan, or the Post-confirmation Debtor; or (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against the Post-confirmation Estate, Post-confirmation Estate Assets, any Property to be distributed under the Plan, or the Post-confirmation Debtor.**

**On and after the Effective Date, each Holder of an Interest in the Debtor is permanently enjoined from taking or participating in any action that would interfere with or otherwise hinder the post-confirmation Debtor or Post-confirmation Debtor from implementing the**

**Plan or the Confirmation Order.**

**Except as otherwise provided in the Plan or the Confirmation Order, on or after the Effective Date all Creditors of, Claimants against, Interest Holders of, and Entities having or claiming an interest of any nature in the Post-confirmation Estate are hereby permanently enjoined and stayed from pursuing or attempting to pursue any action, commencing or continuing any action, employing any process, or any act against the Post-confirmation Estate, Post-confirmation Estate Assets, any Property that is to be distributed under the Plan, or the Post-confirmation Debtor on account of or based upon any right, claim or interest which any such Creditor, Claimant, Interest Holder, or other Entity may have had prior to the entry of the Confirmation Order.**

Release.  Except as otherwise specifically provided herein, including, without limitation, the reservation and retention of the rights of Stabfund to assert any deficiency claims it has against any third-party obligors, confirmation of the Plan (subject to the occurrence of the Effective Date) shall, as to all Holders of Claims and Interest who vote in favor of the Plan, release the Debtor's  officers, directors, employees, and other agents, financial advisors, consultants, attorneys, provided, however, with respect to the professionals, that nothing herein shall contravene the requirements of 1.8(h)(1) of the New York State Rules of Professional Conduct,  and accountants (in such capacity), and their respective assets and properties from any debt, charge, Causes of Action, liability, encumbrance, Lien, security interest, Claim, Interest, or other cause of action of any kind, nature or description (including, but not limited to, any claim of successor liability), other than a right to pursue a claim based on any gross negligence or willful misconduct, including any breach of fiduciary duty constituting gross negligence or willful misconduct, that arose before the Confirmation Date, and any debt of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not a proof of Claim or Interest is or could have been filed or is deemed filed, and whether or not such Claim or Interest is or could have been Allowed.

Exculpation.  In consideration of the Distributions under the Plan, upon the Effective Date, each Holder of a Claim or Interest will be deemed to have released the Debtor, and each of its directors, partners, members, officers, agents, consultants, attorneys, independent accountants, advisors, Professionals, financial advisors, investment bankers and employees (in such capacity), employed by the Debtor from and after the Filing Date from any and all Causes of Action (other than the right to enforce the obligations under the Plan and the right to pursue a claim based on any gross negligence or willful misconduct, including any breach of fiduciary duty constituting gross negligence or willful misconduct) arising out of actions or omissions during the administration of the Chapter 11 Case, the administration of the Estate and/or the Post-confirmation Estate, or the Distribution of any Property or Post-confirmation Estate Assets pursuant to the Plan.

**PART XII**

# METHOD FOR DETERMINATION OF ALLOWED CLAIMS

The Plan provides for payment to be made only to holders of "allowed" claims, in the various classes[2]. As to claims incurred prior to the filing date, there are three avenues by which such claims may become "allowed" claims entitled to payment under the Plan. First, if a claim is listed in Debtor's Chapter 11 schedules (previously filed with the Court and annexed hereto as Exhibit "B" for reference) it is automatically allowed unless those schedules denominate that particular claim as "contingent", "unliquidated", or "disputed", or unless an objection thereto is filed with the Court and served upon the claimant. If an objection is interposed, the validity and amount of the claim will be determined by the Bankruptcy Court, following a hearing.

---

1    The term "allowed claims" is defined in the Plan as follows:

"1.4  "Allowed Claim" means, (1) any Claim listed on debtor's schedules as filed in connection with its reorganization case which is liquidated in amount and is not designated as contingent or disputed and/or, (2) any Claim against debtor, proof of which was filed on or before the bar date for filing claims against debtor's estate, against which filed claim no objection to the allowance thereof has been or is interposed, or as to any such objection there has been a final Order entered and/or (3) any claim against debtor which is reduced to writing, consented to by debtor and liquidated in amount, which writing has been approved by a final Order."

"Impairment of claims" is defined in the Plan as follows:

"1.31  "Impairment of Claims or Interest" - The classes of claims set forth hereafter are described as "impaired" or not "impaired".  Impairment is defined in Section 1124 of the Code as follows:

Section 1124.  Impairment of claims or interests
Except as provided in Section 1123(a)(4) of this title, a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan - -
(1)    leaves unaltered the legal, equitable and contractual rights to which such claim or interest entitles the holder of such claim or interest;
(2)    notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default - -
        (A)    cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title;
        (B)    reinstates the maturity of such claim or interest as such maturity existed before such default;
        ©    compensates the holder of such claim or interest for any damages incurred as a result of any reasonable
        reliance by such holder on such contractual provision or such applicable law; and
        (D)    does not otherwise alter the legal, equitable or contractual rights to which such claim or interest entitles the holder of such claim or interest; or
(3)    provides that, on the effective date of the plan, the holder of such claim or interest receives, on account of such claim or interest, cash equal to - -
        (A)    with respect to a claim, the allowed amount of such claim; or
        (B)    with respect to an interest, if applicable, the greater of - -
                (I)    any fixed liquidation preference to which the terms of any security representing such interest entitle the holder of such interest; or
                (ii)    any fixed price at which the debtor, under the terms of such security, may redeem such security from such holder."

The second method by which a claim may be allowed is by the filing of a "proof of claim" with the Bankruptcy Court. If the claim is not disputed or objected to, it is deemed allowed. Such filing is required in order to assert any claim not included in the schedules, and for any claim denominated therein as "contingent", "unliquidated", or "disputed".

The third manner in which a claim may be determined to be "allowed" is by Order of the Court, after the litigation of a filed objection (or by stipulation settling such litigation setting forth an agreed liquidated claim and which is thereafter "so ordered" by the Court).

## PART XIII
## VOTING IMPAIRMENT, CONFIRMATION AND CRAMDOWN

A. Voting:

Claimants with allowed impaired claims are entitled to vote to accept or reject the Plan. A claimant who fails to vote to either accept or reject the Plan will not be included in the calculations regarding the acceptance or rejection of the Plan.

Classes which are not "impaired" under the Plan, pursuant to Section 1126(f) of the Bankruptcy Code, are presumed to have accepted the Plan. However, said claimants may rebut this presumption. The proponent believes that Classes 4, 6 and 7 are impaired.

If the Court determines that any class is impaired then a ballot to be completed by the holders of Claims will be enclosed herewith. Instructions for completing and returning the ballots are set forth thereon and should be reviewed at length. The Plan will be confirmed by the Bankruptcy Court and made binding upon all claimants if, with respect to all classes of claimants, the Plan is accepted by the holders of two-thirds (2/3) in amount and more than one half (½) in number of allowed claims in each such classes voting upon the plan.

B.     Confirmation Without Acceptance by All Impaired Classes, Cramdown.

Generally, if a Plan is not accepted by all impaired classes, it may nevertheless be confirmed by the Bankruptcy Court if (I) the Plan is accepted by at least one impaired class and it meets all of the other requirements of Section 1129(a) of the Bankruptcy Code; (ii) the Plan does not discriminate unfairly; and (iii) the Plan is fair and equitable to the rejecting classes. Such a finding would require a determination by the Bankruptcy Court that the Plan meets the requirements of Section 1129(b) of the Bankruptcy Code, including that no holder of any claim or interest junior to the claims of the rejecting class is receiving or retaining any property or payment under the Plan solely on account of such claim or interests. This requirement is generally referred to as the "absolute priority rule".

The "cramdown" provisions for confirmation of a Plan despite the non-acceptance of one or more impaired classes of the claims or interest are set forth in Section 1129(b) of the

Bankruptcy Code. Section 1129(b)(1) of the Bankruptcy Code states:

> "Notwithstanding section 510(1) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to the Plan, the Court, on request of the proponent of the Plan, shall confirm the Plan notwithstanding the requirements of such paragraph if the Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan."

The proponent does not represent that the "cramdown" provisions would allow the confirmation of the Debtor's Plan. That determination should be made after a review of the information contained herein.

### C. The Confirmation Hearing

The Bankruptcy Court will schedule a hearing to approve the Disclosure Statement and for Confirmation of the Plan (the "Hearing"). The Hearing will be held before United States Bankruptcy Judge James M. Peck at the United States Bankruptcy Court, Southern District of New York, United States Custom House, One Bowling Green, New York, New York. The Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for the announcement of such adjournment in open Court. At the Hearing, or at any adjourned hearing thereof, the Bankruptcy Court will consider whether the Plan satisfies the various requirements of the Bankruptcy Code, including whether it is feasible and whether it is in the best interests of holders of claims and interests. The Bankruptcy Court will also receive and consider a certification of ballots prepared on behalf of the proponent concerning the results of the vote.

### PART XIV
### POTENTIAL AVOIDANCE AND OTHER SIMILAR CASES

The Debtor will hereafter conduct a review of such books and records, as are available, for the purpose of determining the estate's rights to the recovery of:

(a) fraudulent conveyances pursuant to Section 548 (fraudulent transfers and obligations) and Section 550 (transferee liability), or claims or actions under the Uniform Fraudulent Conveyance Law of New York State, and the other fraudulent conveyance laws extent in the State of New York;

(b) preferential payments, pursuant to Section 547 of the Bankruptcy Code, which includes a payment made (I) within ninety (90) days prior to the filing of the original petition for relief under the Bankruptcy Code (or one year in the case of an insider); (ii) that was for prior obligations of the Debtor, not paid within the time prescribed in the terms usually employed between the Debtor and the Creditor receiving the payment; (iii) made while the Debtor was

insolvent; (iv) which allowed the Creditor to receive more than it would have in a liquidation of the Debtor's estate;

(c)     insider preferential payments, pursuant to Section 547 of the Bankruptcy Code, which includes a preferential payment made by an "insider" within one (1) year prior to the filing of the Petition, instead of ninety (90) days as in the case of all others[3].

## PART XV
## DISCUSSION OF COMPARATIVE RECOVERIES

To determine what might be recovered by an unsecured (Class 5) creditor, in a Chapter 7 liquidation case, the following steps should be taken:

(i)     determine the dollar amount that would be generated from the liquidation by forced sale of the debtor's assets by a Chapter 7 Trustee; and

(ii)     subtract the balance due the secured creditors, the estimated costs of the liquidation (including the Chapter 7 trustee's fees and the fees of professionals employed by the Chapter 7 trustee), the unpaid expenses of the reorganization proceeding and other bankruptcy priority obligations (such as priority wage, union and tax obligations).

These and any other claims arising in the liquidation, or from the current reorganization proceedings, must be paid in full before any funds would be made available to pay unsecured creditors. The value of the distribution resulting from a liquidation (after subtracting the amounts described above) may then be compared with the recovery estimated to be forthcoming under the Plan.

In the event of a Chapter 7, the only asset to liquidate would be the real property and the Air Rights described herein. If the properties of the respective Debtors were not sold in a coordinated sale, the value of both properties would be greatly diminished. Since the properties will be sold either separately or combined as a single development project, the value will be maximized.

In addition, the Debtors have negotiated separate cash infusions from the Stalking Horse Bidder

---

7 The term "insider" is defined in Section 101(31) of the Bankruptcy Code as follows:

                "(31) `insider' includes - -
                        (B) if the debtor is a corporation - -
                                (I)    director of the debtor
                        (ii)   officer of the debtor
                        (iii)       person in control of the debtor, ..."

for the Debtor's estate. In these cases, that amount is $100,000.00 for Administrative, priority, and General unsecured creditors.

Moreover, if the sale is accomplished via a confirmed plan of reorganization, there will be a savings of the transfer tax to both New York State and New York City, which is not available in a Chapter 7 proceeding. Thus, unsecured creditors will receive more under the plan than they would in a Chapter 7 proceeding.

## PART XVI
## TAX CONSEQUENCES

The Debtor is not aware of any tax consequences that may result from the confirmation of this Plan. However, individual creditors may have a bad debt deduction to the extent that their claims are not paid in full. In addition, Insider creditors may have deductions based upon bad debt deductions or may have income tax due based upon the forgiveness of debt as it concerns their personal liability on certain of the Insider mortgages and notes. Creditors and Equity Holders are instructed to consult their own tax advisors. The following discussion summarizes certain U.S. federal income tax consequences of the implementation of the Plan to the Debtor and to certain holders of Claims .The following summary is based on the IRC, Treasury Regulations promulgated thereunder, judicial decisions, and published administrative rules and pronouncements of the IRS, all as in effect on the date hereof. Changes in such rules or new interpretations thereof may have retroactive effect and could significantly affect the U.S. federal income tax consequences described below.

The U.S. federal income tax consequences of the Plan are complex and are subject to significant uncertainties. The Debtor has not requested a ruling from the IRS or an opinion of counsel with respect to any of the tax aspects of the Plan. Thus, no assurance can be given as to the interpretation that the IRS will adopt. In addition, this summary generally does not address foreign, state or local tax consequences of the Plan, nor does it address the U.S. federal income tax consequences of the Plan to special classes of taxpayers (such as foreign taxpayers, broker-dealers, banks, mutual funds, insurance companies, other financial institutions, small business investment companies, regulated investment companies, tax-exempt organizations, persons holding an equity interest as part of an integrated constructive sale or straddle, and investors in pass-through entities).

**Accordingly, the following summary of certain U.S. federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon the individual circumstances pertaining to a holder of a Claim.**

**IRS Circular 230 Notice:  To ensure compliance with IRS Circular 230, holders of Claims are hereby notified that: (A) any discussion of U.S. federal tax issues contained or referred to in this Disclosure Statement is not intended or written to be used, and cannot be used, by holders of Claims for the purpose of avoiding penalties that may be imposed on them under the Tax Code; (b) such discussion is written in connection with the promotion or marketing by the Debtor of the transactions or matters addressed herein; and (c) holders of Claims should seek advice based on their particular circumstances from an independent tax advisor.**

## PART XVII
## <u>UNCLAIMED DIVIDENDS</u>

(a)   All Distributions under the Plan to any Holder of an Allowed Claim shall be made at the address of such Holder as set forth on the lists to be provided by the Debtor to the Post-confirmation Debtor unless the Post-confirmation Debtor has been notified in writing after the Effective Date of a change of address.  Any Entity that is entitled to receive a Cash Distribution under the Plan but that fails to cash a check within one hundred twenty (120) days of its issuance shall be entitled to receive a reissued check from the Post-confirmation Debtor for the amount of the original check, without any interest, if such Entity (i) requests, in writing, the Post-confirmation Debtor to reissue such check, and (ii) provides the Post-confirmation Debtor with such documentation as the Post-confirmation Debtor requests to verify in her/his sole discretion that such Entity is entitled to such check.  If an Entity fails to cash any check within one hundred twenty (120) days of its issuance or fails to request re-issuance of such check within one hundred twenty (120) days of its issuance, such Entity shall be deemed to have forfeited the amount of the Distribution or Post-confirmation Estate provided for in such check.  Any such forfeited Distributions shall revert to the Post-confirmation Estate and the Claim of any Holder or successor to such Holder with respect to such forfeited Distributions shall be discharged and forever barred, notwithstanding any other provisions in the Plan or any federal or state escheat laws to the contrary.

(b)        In the event that any Distribution to any Holder of an Allowed Claim is returned to the Post-confirmation Debtor as undeliverable, no further Distributions will be made to such Holder unless and until the Post-confirmation Debtor is notified in writing of such Holder's then-current address.  All claims for undeliverable Distributions for which no check is issued, must be made within one hundred twenty (120) days of the issuance of the original check.  After such date, all unclaimed Distributions shall revert to the Post-confirmation Estate and the claim of any Holder or successor to such Holder with respect to such Distribution shall be forfeited, discharged and forever barred, notwithstanding any provisions in the Plan or any federal or state escheat laws to the contrary.  Upon such forfeiture of Cash or other Post-confirmation Estate property, such Cash or Post-confirmation Estate Assets shall be the Real Property of the Post-confirmation Estate.

## PART XVIII
## <u>RETENTION OF JURISDICTION</u>

Notwithstanding entry of the Confirmation Order, or the occurrence of the Effective Date or Consummation of the Plan, the Chapter 11 Case having been closed, or a Final Decree having been entered, the Bankruptcy Court (or the District Court, as the case may be) shall have and retain jurisdiction of matters arising out of, and related to the Chapter 11 Case and the Plan under, and for the purposes of, Bankruptcy Code §§ 105(a), 1127, 1142 and 1144 and for, among other things, the following purposes:

(a)     To consider any modification of the Plan under Bankruptcy Code § 1127 and/or modification of the Plan before "substantial consummation" as defined in Bankruptcy Code § 1101(2), and to consider any modification of the Plan to cure any defect or omission, or reconcile any inconsistency in the Plan, the Disclosure Statement or in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order.

(b)     To hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, if any, and allowance of Claims resulting therefrom.

(c)     To (i) hear and determine any Claim or Cause of Action arising in or related to the Chapter 11 Case; and (ii) to adjudicate any Causes of Action or other proceedings currently pending or which may be commenced by the Post-confirmation Debtor after the Effective Date or otherwise referenced herein or elsewhere in the Plan, including, but not limited to, the adjudication of any Causes of Action and any and all "core proceedings" under 28 U.S.C. § 157(b), which are or may be pertinent to the Chapter 11 Case and which the Post-confirmation Debtor may deem appropriate to commence and prosecute in support of implementation of the Plan.

(d)     To determine any and all adversary proceedings, applications, and contested matters filed or commenced by the Post-confirmation Debtor after the Effective Date, including, without limitation, any Causes of Action.

(e)     To ensure that Distributions are accomplished as provided in the Plan.

(f)     To hear and determine any objections to Administrative Expense Claims, to Proofs of Claim, or to Claims and Interests filed and/or asserted both before and after the Confirmation Date, including any objections to the classification of any Claim or Interest, and to allow or disallow any disputed Administrative Expense Claim, Claim or Interest, in whole or in part, and any request for estimation of Claims.

(g)     To protect the Post-confirmation Estate from adverse Claims or interference inconsistent with the Plan, including to hear actions to quiet or otherwise clear title to such property of the Post-confirmation Estate based upon the terms and provisions of the Plan, including, without limitation, with respect to the Real Property.

(h)     To (i) enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated; (ii) to issue such orders in aid of execution of the Plan as may be necessary and appropriate, to the extent authorized by Bankruptcy Code § 1142; and (iii) to interpret and enforce any Orders previously entered in the Chapter 11 Case to the extent such Orders are not superseded or inconsistent with the Plan.

(i)     To hear and determine all applications for compensation and reimbursement of expenses of Professionals under Bankruptcy Code §§ 330, 331, and 503(b) for services rendered and expenses incurred prior or subsequent to the Confirmation Date.

(j)     To hear and determine all litigation, Causes of Action and all controversies, suits and disputes that may arise in connection with the interpretation, implementation or enforcement of the Plan, including but not limited to, any and all litigation and/or Causes of Action brought by the Debtor, whether such litigation and/or Causes of Action is/are commenced either prior to or after the Effective Date.

(k)     To hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code §§ 345, 505, and 1146.

(l)     To enter a Final Decree closing the Chapter 11 Case.

(m)     To consider and act on the compromise and settlement of any litigation, Claim against or Cause of Action asserted in connection with the Chapter 11 Case or the Post-confirmation Estate.

(n)     To hear and determine all matters and disputes relating to the Auction and the Closing.

(o)     Without limiting the generality of the foregoing and notwithstanding the Effective Date and to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction over the Post-confirmation Estate after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits and issues that may arise in connection herewith or therewith, including, without limitation, any Entities' obligations incurred in connection herewith or therewith, including without limitation, any action against the Post-confirmation Debtor or any or all of the Post-confirmation Debtor's professionals or the Post-confirmation Estate, and any action seeking turn over or recovery of assets included in the Post-confirmation Estate.

## PART XIX
## FINANCIAL INFORMATION

The Debtor has filed with the Bankruptcy Court monthly operating reports. The most current Monthly Operating Report is annexed hereto as Exhibit "D". Subsequent Operating Reports may be examined in the office of the Clerk of the Bankruptcy Court, during normal business hours, or are available on line at the Court's Web Site through PACER.

## CONCLUSION

No representations concerning Debtor or the Plan are authorized other than as set forth in this Disclosure Statement. Any representation or inducements made to secure acceptances, other than those contained in this Statement, should not be relied upon by any claimants in arriving at their decision as to whether to accept or reject the Plan. The information contained in this Disclosure Statement has not been subject to a certified audit. The Debtor is unable to warrant that the information contained herein is without any inaccuracy, although great effort has been made to insure that the information set forth in this Disclosure Statement is true and accurate.

Dated: Huntington, New York
April 14, 2011

Law Offices of Avrum J. Rosen, PLLC
Attorneys for the Debtor

By:    S/Avrum J. Rosen
       Avrum J. Rosen
       (a member of the firm)
       38 New Street
       Huntington, NY 11743
       (631) 423-8527
       AJRLAW@aol.com

By:_s/ Leonard Taub___
Leonard Taub, Member